**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RODERICK T. ALLEN,** | ) | |
| **#N94327,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17-cv-00968-MJR** |
| | ) | |
| **UNIDENTIFIED PERSON,** | ) | |
| **DR. BUTALID,** | ) | |
| **SHARON McGLORN,** | ) | |
| **DR. SIDDIQUI, and** | ) | |
| **WARDEN J. LASHBROOKE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Roderick Allen, an inmate who is incarcerated at Menard Correctional Center ("Menard"), is currently subject to a filing restriction imposed pursuant to *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995). *See Allen v. Engelage*, No. 15-cv-00175-MJR (S.D. Ill.) (Doc. 15). On September 7, 2017, Plaintiff filed a motion seeking leave to bring a new case in this District, in order to address his claim of excessive weight loss. *Id*. (Doc. 20). The Court granted his motion out of an abundance of caution and allowed him to file the instant civil rights action pursuant to 42 U.S.C. § 1983, in order to address a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("Motion for TRO") (Doc. 2). Because Plaintiff seeks a TRO, the Court will immediately review this matter. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012).

**Motion for TRO**

In the Motion for TRO (Doc. 2) and Complaint (Doc. 1), Plaintiff alleges that he has suffered from significant weight loss since he received a tuberculosis (TB) skin test on February 26, 2010. (Doc. 1, p. 5; Doc. 2, pp. 1, 5, 10). Plaintiff believes that he was exposed to some unidentified noxious substance or "destructive . . . chemical [re]action" during the test that caused him to become ill. *Id*. His body weight "immediately began to drop, and his physical appearance began to deteriorate." *Id*. Plaintiff estimates that his weight was around 165 pounds in 2010 and has since decreased to approximately 120 pounds. *Id*. He assures the Court that he has not been on a hunger strike in recent years[1] and eats all food that is served to him. (Doc. 1, pp. 6, 29; Doc. 2, p. 2). Menard officials refuse to acknowledge any problem with Plaintiff's weight or health, so he now asks the Court to intervene. (Doc. 1, pp. 6, 9; Doc. 2, pp. 2, 6).

Plaintiff specifically seeks a medical evaluation and treatment that includes a urine test. (Doc. 1, pp. 7, 13-14; Doc. 2, pp. 3, 6). Plaintiff also requests thermal underwear, toothpaste, and toothbrushes, for no stated reason. (Doc. 1, pp. 13-14; Doc. 2, p. 3). Most importantly, he seeks the following diet tailored to his perceived need for increased nourishment:

> (a) In addition to one full-portion regular food tray at each meal provide on a separate Styrofoam tray: four servings of the protein component of the meal at lunch and dinner; one serving of vegetable or lettuce, one serving of can/fresh fruit, and, four pieces of bread. When baked/fried chicken is served provide three servings. However, no pork is to be provided, and no deep-fried meats [chicken nuggets, chicken patty, or fish patty]. Instead provide four servings of some other protein [tuna fish, hot dogs, turkey (patty or ground), etc];
>
> (b) Beverage served at each meal: Two milks at breakfast (one milk is eight ounces), three milks at lunch, and two juices at dinner (one juice of four ounces).

---

[1] He admits going on a hunger strike for two or three weeks in 2014. (Doc. 1, pp. 6, 29; Doc. 2, p. 2).

(Doc. 1, pp. 13-14; Doc. 2, p. 2). Finally, because he is concerned that his physical appearance makes him more susceptible to an assault,[2] he would like to work on strength training and, to this end, requests a pair of running shoes and isolated outdoor exercise for "intense outdoor running," which allegedly had a "very positive effect on [his] physical appearance" following the 2010 TB skin test. (Doc. 1, pp. 11, 13-14; Doc. 2, pp. 3, 7). In the Complaint, Plaintiff seeks the same relief, as well as money damages. (Doc. 1, pp. 13-14).

A TRO is an order issued without notice to the party to be enjoined, and it may last no more than fourteen days. *See* FED. R. CIV. P. 65(b)(2). A TRO may issue only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

A preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* FED. R. CIV. P. 65(a)(1). To obtain preliminary injunctive relief, Plaintiff must demonstrate that (1) he will suffer irreparable harm without the relief; (2) his underlying case has some likelihood of success on the merits; and (3) no adequate remedy at law exists. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citing *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007)). If those three factors are shown, the court then must balance the

---

[2] In a Declaration offered in support of his Motion for TRO, Plaintiff refers to three incidents in support of his claim that his physical deterioration makes him more susceptible to assault: (1) he describes being "held by the neck" while he was escorted without cuffs to another cell on April 17, 2017; (2) he was forced to lie on the cell floor with his hands behind his back uncuffed while an officer used his foot to "appl[y] pressure to [Plaintiff's] right-side rib cage" on July 26, 2017; and (3) he was "removed from the same cell shared with Prisoner Spivey" after "numerous incidents of threats and intimidation" between the inmates. (Doc. 1, pp. 8, 11-12, 37-42; Doc. 2, pp. 7-8). Plaintiff does not explain how his size or appearance played any role in these incidents or assert any claims based on these incidents.

harm to each party and to the public interest from granting or denying the injunction. *Id.* (citations omitted). Plaintiff's request for injunctive relief is not supported by the allegations in his Motion for TRO, Complaint, or exhibits.

First, no specific facts suggest that Plaintiff will suffer immediate or irreparable injury, loss, or damage without immediate relief. He describes weight loss that has occurred over the course of seven years and was most dramatic in 2010. (Docs. 1-2). He describes no sudden change in his weight since 2014 and instead alleges that it has gradually decreased by an estimated thirteen- to twenty- pounds in three years. (Doc. 1, p. 30; Doc. 2, p. 1).

Certainly, Plaintiff's low weight is concerning. At the same time, Plaintiff admits that he has always been thin. (Doc. 1, p. 6; Doc. 2, p. 5). He does not indicate how tall he is. (Docs. 1-2). He also does not describe a sudden decline in his weight in recent months. *Id*.

Furthermore, his weight loss is unverified. Plaintiff admits that he does not actually know how much he weighs. This is because he will not allow prison officials to weigh him, take his vital signs, or treat him. (Doc. 1, pp. 8, 20-22). Plaintiff believes that they will only falsify his medical records. (Doc. 1, pp. 7, 30; Doc. 2, p. 7). Exhibits accompanying the Complaint document numerous instances since 2014 when Plaintiff has refused offers by medical staff to weigh him, take his vital signs, or treat him. (Doc. 1, pp. 20-22, 25-26). In a Declaration, Plaintiff confirms this. (Doc. 1, p. 30). Further, he offers no other information, such as detailed descriptions of his deteriorating appearance, loose clothing, etc., to support his claim of excessive weight loss since 2014.

Plaintiff identifies no specific medical problems or symptoms that have coincided with his weight loss. (Docs. 1-2). He refers to "serious short and long term health problems" in the Motion for TRO. (Doc. 2, p. 3). However, he describes none in his pleadings. (Docs. 1-2). His

request for a urine test might suggest that he has some quantifiable health problem, but he includes the results of two urine tests from 2014 and 2016 that were both normal. (Doc. 1, pp. 24, 33). Similarly, he suggests that intense, isolated outdoor running will help with strength training, but he makes no claim that he has been denied exercise opportunities. (Docs. 1-2). The pleadings simply contain no indication--other than his own unverified, bare assertion of weight loss--that Plaintiff faces any immediate or irreparable harm.

This finding extends to his fear of assault. Plaintiff alludes to two instances in which prison guards made physical contact with him while he was not cuffed and applied "pressure" to restrain him or move him. (Doc. 1, pp. 8, 11-12, 37-42; Doc. 2, pp. 7-8). He also refers to threats exchanged with another inmate that led to their separation. However, he refers to these instances in support of his request for strength training and does not bring separate claims based on these encounters, beyond speculating that prison officials may be attempting to instigate an assault on him. *Id.*

Second, Plaintiff is unlikely to succeed on the merits of his claim, which is rooted in the Eighth Amendment proscription against cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials also violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on this claim, Plaintiff must establish that he suffered from an objectively serious medical condition and that prison officials responded with deliberate

indifference. Plaintiff's allegations satisfy neither requirement, particularly the first. Other than his unverified claim of weight loss, Plaintiff offers virtually no allegations which suggest that he has an objectively serious medical condition. He also offers no details in the Motion for TRO and insufficient allegations in the Complaint regarding each defendant's response to his perceived medical condition, falling short of satisfying the subjective component of this claim as well.

Finally, remedies appear to be available in the prison. According to the pleadings, Plaintiff has been offered medical care and refused the offers. His mistrust of the medical staff, without more, provides no support for a finding that immediate injunctive relief is warranted.

Moreover, his dietary requests would be unduly burdensome on the prison under the circumstances presented. Plaintiff does not simply ask for double or triple portions. He includes a lengthy list of dietary demands. These demands seem to have less to do with increasing his general level of nourishment for health reasons than they do with increasing his access to desirable foods. He offers no reason for requesting certain foods, at defined times, in the portions sizes he demands. The balance of equities tips in favor of the defendants. Accordingly, Plaintiff's Motion for TRO shall be **DENIED**.

## Pauper Status

Plaintiff also does not qualify to proceed any further in this action without his prepayment of the full filing fee. (Doc. 3). According to his trust fund statement, Plaintiff lacks sufficient funds to prepay this $400.00 fee. Although payment of the fee may be made in installments if Plaintiff's request for IFP status is granted, § 1915(g) limits the ability of Plaintiff to proceed IFP, as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or

6

appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury*.

28 U.S.C. § 1915(g) (emphasis added).

Plaintiff is barred from proceeding IFP under 28 U.S.C. § 1915(g), unless he faces imminent danger of serious physical injury. Between 2011 and 2015, he filed nineteen lawsuits, and most were dismissed as being frivolous or meritless. In the process, Plaintiff accumulated more than three "strikes."[3] *See* 28 U.S.C. § 1915(g). He continued filing so many frivolous, meritless, and even redundant claims after doing so that he racked up more than $6,000.00 in unpaid filing fees[4] and earned a filing restriction, which prohibited him, with certain narrow exceptions, from filing any new civil action in this Court until such time as he has paid the $6,625.00 in outstanding filing fees in full. (Doc. 15).

---

[3] *Allen v. Chapman, et al.*, Case No. 11-cv-1130-MJR (S.D. Ill., dismissed Aug. 29, 2012); *Allen v. Godinez, et al.*, Case No. 12-cv-936-GPM (S.D. Ill., dismissed Oct. 18, 2012); *Allen v. Harrington*, Case No. 13-cv-725-GPM (S.D. Ill., dismissed Aug. 22, 2013); and *Allen v. Bower, et al.*, Case No. 13-cv-931-MJR (S.D. Ill., dismissed March 17, 2014); *Allen v. Chapman*, Case No. 14-cv-348-JPG (S.D. Ill., dismissed Jun. 24, 2014).

[4] The unpaid fees that Plaintiff owes in each of the cases that he has filed in this District are as follows: *Allen v. Chapman*, Case No. 11-cv-1130-MJR (S.D. Ill., dismissed Aug. 29, 2012) ($350.00); *Allen v. Godinez*, Case No. 12-cv-936-GPM (S.D. Ill., dismissed Oct. 18, 2012) ($350.00); *Allen v. Harrington*, Case No. 13-cv-725-GPM (S.D. Ill., dismissed Aug. 23, 2013) ($350.00); *Allen v. Bower*, Case No. 13-cv-931-MJR (S.D. Ill., dismissed Mar. 17, 2014) ($400.00); *Allen v. Cartwright*, Case No. 14-cv-98-MJR-SJW (S.D. Ill. 2014) ($350.00); *Allen v. Chapman*, Case No. 14-cv-348-JPG (S.D. Ill., dismissed Jun. 24, 2014) ($400.00); *Allen v. Mennenrich*, Case No. 14-cv-380-JPG (S.D. Ill., dismissed July 7, 2014) ($400.00); *Allen v. Hanks*, Case No. 14-cv-883-JPG (S.D. Ill., dismissed Nov. 3, 2014) ($400.00); *Allen v. Engelage*, Case No. 15-cv-175-MJR (S.D. Ill., IFP denied and subject to dismissal) ($400.00); *Allen v. Dunbar*, Case No. 15-cv-587-MJR (S.D. Ill., dismissed pursuant to this order) ($400.00). The unpaid fees that Plaintiff owes in each of his related appeals are as follows: *Allen v. Chapman*, App. No. 12-3162 (7th Cir., dismissed Jan. 17, 2013) ($455.00); *Allen v. Godinez*, App. No. 12-3543 (7th Cir. Jan. 16, 2013) ($455.00); *Allen v. Bower*, App. No. 14-2249 (7th Cir., dismissed Jan. 23, 2015) ($505.00); *Allen v. Cartwright*, App. No. 15-1236 (7th Cir., dismissed July 15, 2015) ($505.00); *Allen v. Cartwright*, App. No. 15-1259 (7th Cir., dismissed July 15, 2015) ($505.00). Excluded from this total are the filing fees that Plaintiff currently owes in the following four pending cases: *Allen v. Hanks*, Case No. 14-cv-591-JPG-PMF (S.D. Ill., filed May 22, 2014); *Allen v. Asselmeier*, Case No. 15-cv-334-NJR-DGW (S.D. Ill., filed Mar. 27, 2015); *Allen v. Hanks*, App. No. 15-1491 (7th Cir., filed May 1, 2015); *Allen v. Hanks*, Case No. 15-cv-863-SMY (S.D. Ill., filed Aug. 5, 2015).

Given his litigation history, Plaintiff is only eligible to proceed IFP in this case, if he faces imminent danger of serious physical injury. 28 U.S.C. § 1915(g). The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). Courts generally "deny leave to proceed [as a pauper] when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id*. at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed [as a pauper]." *Id*. at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

The allegations support no finding that Plaintiff faces imminent danger of serious physical injury at this time, for the same reasons that he did not qualify for a TRO. Plaintiff's claim of weight loss is based on his own estimates and unsupported by any suggestion that he faces a related health problem. Plaintiff will not allow prison medical staff to weigh or treat him, and he includes exhibits which reveal that he has repeatedly refused such offers since January 2016, shortly after the filing restriction took effect in August 2015. Plaintiff has ignored the urine test results from 2014 and 2016, both of which were normal. He otherwise offers no reason why IFP status should be granted and he should be allowed to proceed any further without the prepayment of the full filing fee for this action. The Court discerns no basis in the Complaint, let alone the other pleadings, for a finding of imminent danger. The IFP Motion shall therefore be **DENIED.**

Finally, although the Court has considered Plaintiff's Motion for TRO, it declines to entertain this matter any further. Plaintiff is the subject of a filing restriction that he earned in a case involving virtually identical claims in *Allen v. Engelage*, No. 15-cv-00175-MJR (S.D. Ill.) (Doc. 15). The claims in this case are similar to claims that twice resulted in the revocation of Plaintiff's IFP status by the Seventh Circuit Court of Appeals. *See Allen v. Chapman*, App. No. 12-3162 (7th Cir. 2012) (Doc. 17); *Allen v. Grooves*, App. No. 12-2543 (7th Cir. 2012) (Doc. 5) (revoking IFP status in two cases involving claims against prison officials for allegedly attempting to kill Plaintiff by administering a contaminated TB skin test after finding that "no reasonable person would suppose that Allen's appeal has merit"). The filing restriction was extended by Order of this Court until August 18, 2018, and shall now include the Complaint in this case as well. *Allen v. Engelage*, No. 15-cv-00175-MJR (S.D. Ill.) (Doc. 21).

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) and Motion for Leave to Proceed *in forma pauperis* (Doc. 3) is **DENIED**. Plaintiff is obligated to pay the full filing fee of $400.00 for this action.

**IT IS FURTHER ORDERED** that the filing restriction imposed in *Allen v. Engelage*, No. 15-cv-00175-MJR (S.D. Ill.) (Doc. 15), and extended by Order (Doc. 21) dated September 11, 2017, covers the Complaint (Doc. 1) in this case. The Complaint and this action are hereby **DISMISSED without prejudice** pursuant to the filing restriction.

**IT IS ORDERED** that the pending Motion for Recruitment of Counsel (Doc. 4) is **DENIED** as **MOOT**, given the Court's decision that the filing restriction applies to the Complaint.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, because Plaintiff has "struck out" and has not shown that he is in imminent danger of serious physical injury, this Court will not grant him permission to proceed *in forma pauperis* on appeal. Finally, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

Finally, Plaintiff is **FURTHER ADVISED** that he is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his address, and that the Court will not independently investigate his whereabouts. This shall be done in writing and not later than seven (7) days after a change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents.

The Clerk is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

**DATED: September 14, 2017**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court